IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **IN RE**<br>**EXTRADITION APPLICATION TO**<br>**THE KINGDOM OF THE**<br>**NETHERLANDS,**<br>**OF SEPTEMBER 10, 2021** | Docket No. 1:21mc……<br><br>**MOTION ON BEHALF OF**<br>**OLEKSANDR MORGUNOV TO QUASH**<br>**EXTRADITION APPLICATION TO THE**<br>**NETHERLANDS OF SEPTEMBER 10, 2021**<br><br>WITH ANNEXED MEMORANDUM OF<br>POINTS AND AUTHORITIES,<br>EXHIBITS 1-12. |

Movant OLEKSANDR MORGUNOV (Morgunov), a Ukrainian citizen, respectfully moves this honorable Court to Quash the Extradition Warrant to the Netherlands, issued by the U.S. Department of Justice, consisting of a Letter for provisional arrest, and the Extradition Request, of September 10, 2021. See Exhs 1, 2.

The Motion seeks a determination that these instruments are not in compliance with the domestic law in the U.S. and the Extradition Treaty with the Netherlands. Exhs 3, 4. The extradition documents, representing selective prosecution, contained material omissions. Under the Dual Criminality requirement, one charge, that is not prosecutable under the Dutch Criminal Code was misstated ("slavery or illegal transporting of persons"). The representations to the Dutch authorities omitted that of three statutes under which Morgunov was indicted invokes possible capital punishment, outlawed in the Netherlands. Among other examples, the application omitted that the Government seeks Morgunov, not U.S. citizen, to pay, among three defendants, $9.5 million to the U.S. Treasury. As a part of relief, Morgunov requests to issue an injunctive Order prohibiting the DOJ's Office of International Affairs to pursue his extradition.

Dated: December 10, 2021.        Respectfully submitted,

_____/George Lambert/

George Lambert, Esq.
D.C. bar #979327; MA bar # 568769; FL bar #1022697
1025 Connecticut Ave., #1000 NW
Washington, D.C., 20036
Tel. (202) 640 1897, Fax (800) 952 1950
Email: LawDC10@gmail.com;
Office.Law.323@gmail.com
Attorney for Oleksandr Morgunov, Special appearance
(representation limited to prosecution of present Motion to
Quash Extradition)

LIST OF EXHIBITS:

1. Letter of request for provisional arrest of O. Morgunov, August 23, 2021;
2. Extradition Request to the Netherlands, September 10, 2021;
3. Extradition Treaty U.S.-European Union, 2003;
4. Amended Extradition Treaty of the U.S. with the Netherlands, 2004;
5. Indictment, case 21cr10008, July 20, 2021;
6. Superseding Indictment, November 10, 2021;
7. Order closing case and quashing subpoena of the U.S. Attorney's Office, December 28, 2020, case 1:20-mc-25171, Judge The Hon. Cecilia M. Altonaga;
8. Order closing case and quashing Subpoena of the U.S. Attorney's Office, December 29, 2020, case 20-mc-25174 (The Hon. Ursula Ungaro);
9. Order closing case and quashing Subpoena of the U.S. Attorney's Office, December 31, 2020; case 20-25172 (The Hon. Jose E. Martinez).
10. Congressional Records, 82th Congress, interpretation of 8 U.S.C. Section 1324, 98th Vol., part 1, extract from pp 1 to 1364.
11. Table.  Response to Government's Citations to Evidence in Bill of Particulars, November 24, 2021.
12. Criminal Code of the Netherlands.

# LIST OF AUTHORITIES

*Air France v. Saks*,                                                                                 31
    470 U.S. 392, 399, 105 S.Ct. 1338, 84 L.Ed.2d 289 (1985)

*Alvarez v. General Wire Spring Co*.                                                                 22
    (M.D.Fla, 2009) 2009 WL 248264

*Berdejo v. Exclusive Builders, Inc*.,                                                               25
    M.D.Pa.2011, 865 F.Supp.2d 617

*Cable Holdings of Georgia, Inc. v. McNeil Real Estate Fund VI, Ltd*.,                               18
    953 F.2d 600

*Castro v. United States*,                                                                           28
    5 Cir. 1961, 296 F.2d 540

*Cf. O'Neil v. Gilbert*,                                                                             22
    625 So. 2d 982 (Fla. Dist. Ct. App. 3d Dist. 1993)

*Chicanos Por La Causa, Inc. v. Napolitano*                                                          23
    (C.A. 9, 2009) 558 F.3d 856

*Club Madonna, Inc. v. City of Miami Beach* (S.D.Fla,)                                               20
    500 F.Supp.3d 1304

*Del Rey Tortilleria, Inc. v. N.L.R.B*.,                                                             21
    C.A.7 1992, 976 F.2d 1115

*Duke v. United States*,                                                                             29
    5 Cir. 1956, 233 F.2d 897

* *Durbin v. U.S.,*                                                                                   4
    *221 F.2d 520 (1954)*

*E.E.O.C. v. Restaurant Co*.                                                                         25
    (D.Minn, 2007) 490 F.Supp.2d 1039

*Federal Election Comm'n v. Florida For Kennedy Comm*.,                                              19
    681 F.2d 1281, 1287 (11th Cir.1982)

*Fernandez v. Phillips*,                                                                             33
    268 U.S. 311, 312, 45 S.Ct. 541, 69 L.Ed. 970 (1925)

*Frisby v. Schultz*,                                                                                 18
    487 U.S. 474, 483, 108 S.Ct. 2495, 2501, 101 L.Ed.2d 420 (1988)

*Gallo-Chamorro v. United States*,                                                31
    233 F.3d 1298, 1306 (11th Cir. 2000)

*Garcia-Godos v. Warden*,                                                        30
    853 Fed.Appx. 404, 408 (11th Cir. 2021)

*Guevara v. Holder*,                                                             24
    C.A.9 2011, 649 F.3d 1086

*Hernandez v. Altec Environmentalproducts LLC*                                   22
    (S.D.Fla. Nov. 23, 2011, WL 13108059)

*In re Extradition of Jose Batista Do Nascimento*,                               33
    2021 WL 1192144, (M.D. Fla. Jan. 25, 2021)

*In re Extradition of Shaw*,                                                     33
    2015 WL 3442022, (S.D. Fla. May 28, 2015)

*In re Extradition of Strunk*                                                    33
    (E.D.Cal.) 293 F.Supp.2d 1117

*\* In re Hijazi*                                                                5
    (C.A. 7, 2009) 589 F.3d 401

*Kechkar v. Gonzales*,                                                           21
    C.A.10 2007, 500 F.3d 1080

*Ketchikan Drywall Services v. Immigration and Customs Enforcement*,             24
    725 F.3d 1103

*Ketchikan Drywall Services v. Immigration and Customs Enforcement*,             24
    725 F.3d 1103

*KPMG Peat Marwick of Puerto Rico v. U.S. I.N.S.*,                               24
    943 F.2d 91

*Landi v. Home Depot USA, Inc.*                                                  22
    (M.D.Fla, 2019 WL 4644243)

*Larreal v. Telemundo of Florida, LLC*,                                          22
    S.D.Fla.2020, 2020 WL 5750099

*Manrique Carreno v. Johnson*                                                    19
    (S.D.Fla,) 899 F.Supp. 624

*Matter of Extradition of Santos*                                              33
    (C.D.Cal, 2017) 228 F.Supp.3d 1034

*Matter of Extradition of Wallace*                                             33
    (M.D.Fla, June 11, 2021) --- F.Supp.3d ---- 2021 WL 2401906

*Maximov v. United States*,                                                    33
    373 U.S. 49, 54, 83 S.Ct. 1054, 10 L.Ed.2d 184 (1963)

*N.L.R.B. v. Domsey Trading Corp*.,                                           21
    C.A.2 2011, 636 F.3d 33

*N.L.R.B. v. Kolkka*,                                                          21
    C.A.9 1999, 170 F.3d 937

*Nelson v. U.S.*,                                                             27
    5 Cir. 1969, 415 F.2d 483

*Ramos v. Diaz*,                                                             32
    179 F.Supp. 459, 463 (S.D.Fla.1959)

*Roberts v. U.S.*                                                            28
    (C.A. 5, 1969) 416 F.2d 1216

*Susnjar v. U. S.,*                                                          23
    *C.C.A.Ohio*, 27 F.2d 223

*Torres v. Precision Industries, Inc.,*                                      25
    C.A.6, 995 F.3d 485

*U.S. v. Falcone*,                                                           27
    311 U.S. 205

*U.S. v. Isaacs*                                                             27
    (C.A. 5, 1975) 516 F.2d 409

* *U.S. v. Kashamu*                                                           5
    (N.D.Illinois, July 15, 2010) not reported, 2010 WL 2836727

*U.S. v. Kim*,                                                               21
    C.A.2 (N.Y.) 1999, 193 F.3d 567

*U.S. v. O'Brien*                                                            25
    (2010) 560 U.S. 218

*U.S. v. Pitawanakwat*,                                                          32
    120 F.Supp.2d 921

*U.S. v. Silvestri*                                                              26
    C.A. 11, 2005, 409 F.3d 1311

* *U.S. v. Santos*                                                              29
    *553 U.S. 507*

*U.S. v. Steele*,                                                               26
    178 F.3d 1230 (11th Cir. 1999)

*U.S. v. Yonn*,                                                                 26
    702 F.2d 1341 (11th Cir. 1983)

*U.S. v. Zheng*,                                                                17
    C.A.11 (Fla.) 2002, 306 F.3d 1080, certiorari denied 538 U.S. 925

* *U.S.A. v. Siriwan*                                                           5
    (C.D.Cal, July 28, 2011)

*United States v. Alvarez–Machain*,                                            30
    504 U.S. 655, 663, 112 S.Ct. 2188, 119 L.Ed.2d 441 (1992)

*United States v. Brown*,                                                      18
    731 F.2d 1491, 1494 (11th Cir.1984)

*United States v. Duarte-Acero*,                                               30
    208 F.3d 1282, 1285 (11th Cir. 2000)

* *United States v. Firtash*                                                   5
    (N.D.Illinois, 2019) 392 F.Supp.3d 872

*United States v. Herbage*,                                                    31
    850 F.2d 1463, 1465 (11th Cir. 1988)

*Veliz v. Rental Service Corp. USA, Inc*.                                      22
    (M.D. Florida) 313 F.Supp.2d 1317.

## TABLE OF CONTENTS

**Introduction**………………………………………………………………………………1

**1. Proper Forum in the U.S. District Court for the District of Columbia**……………2

**2. Underlying Facts Relevant for this Motion**……………………………………………3

**3. Morgunov, Ukrainian Citizen, Is not a Fugitive and Has Had no Obligation to Travel to or Stay in the United States; Inapplicability of Fugitive Disentitlement**….4

**4. Underlying Criminal Case and the Indictment**………………………….…………..5

**5. Dual Criminality Requirement under the Convention with the Netherlands Requires Dismissal**………………………………………………………………………7

**6. Letter from DOJ Omitted that a Statute under Which Morgunov Is to Be Extradited Is Not Listed under the "Dual Criminality" Clause and Allows Capital Punishment**……………………………………………………………………………..8

**7. Court Should Sua Sponte Order the Government to Show Any Evidence of "Slavery" or "Illegal Transporting of Persons," As Represented Before the Dutch Authorities**………………………………..……………………………………………9

**8. Statement on August 23, 2021: Morgunov's "Willful Tax Evasion" Has No Basis**………………………………………………………………………………...10

**9. The Extradition Warrant of September 10, 2021, Involved Omission of Material Facts**………………………………………………………………………………..11

**10. Government's Prohibition to Co-Defendant in the Joint Criminal Case to Share Evidence with Co-Defendant in the Netherlands Should Be Held Unconstitutional.**15

**11. Possible Reliance of Prosecuting Counsel on the Fugitive Disentitlement Statute Would Be Misplaced**……………………………………………………………16

**12. Superseding Indictment Misapplied the Statute 8 U.S.C. 1324, Instead of Section 1324a, Allowing a Maximum 6 Months Penalty or Fine of $3,000**……..……………16

**13. Issue that the Government Incorrectly Substituted 18 U.S.C. Section 1324a by Section 1324, Converting Penalty From up to 6 Months up to Capital Punishment**………………………………………………………………………...19

**14. Conspiracy Was not Pleaded Specifically, Whereas that Was Responsibility of Restaurants and Hotels, as Employers, to Verify and Pay Employment Taxes**……20

**15. Missing Specificity of the Indictment and Superseding Indictment Making it Fundamentally Defective Is Supported by Case Law from Various Circuits**………24

**16.  The Indictment and the Superseding Indictment Failed to Plead the Elements of the Crime of Conspiracy that Must Be Charged and Proved Beyond Reasonable Doubt**………………………………………………………………………………25

**17.  Indictment and Superseding Indictment Failed to Contain an Essential Element of the Crime: Agreement to Conspire with Criminal Intent**………………………...27

**18.  Money Laundering Conspiracy Pleaded in Superseding Indictment, Failure of Essential Element, Agreement to Engage in Money Laundering**……………………28

**19.  Alleged Conspiracy to Harbor and Induce Aliens to Remain Also Has no Basis**………………………………………………………………………………30

**20.  Case Law on Extradition Supports Conclusion that the Present Extradition Request Should Be Quashed**………………………………………………………...30

**21.  The Government's Pursuing Three Ukrainians but Sparing American Hotels and Restaurants Triggers Application of the Political Exception, in the Extradition Treaty**………………………………………………………………………………32

**22.  Prior Courts' Orders Granting Motions to Quash and Closing the Cases Opened by the Same Prosecutors' Team**……………………………………………………34

**23.  These Issues on the Law Cannot Be Raised in the Dutch Courts, Warranting Consideration on the Merits in District Court**………………………………………...34

**Conclusion**……………………………………………………………………………35

## MEMORANDUM OF POINTS AND AUTHORITIES

### Introduction.

The quintessential issue at bar is a highly questionable prosecutorial act.  The Government's prosecutors, to achieve extradition of a Ukrainian citizen, in their submission to the authorities of the Netherlands, misstated the charge a "*Conspiracy to Harbor Aliens and Induce them to Remain*." Such offense <u>does not exist</u> in the Dutch Criminal Code.

The Government replaced it with a description: "*offenses relating to slavery or the illegal transporting of persons*," which has nothing to the Indictment in the underlying case.  Such a controversial prosecutorial act, misrepresenting the actual charge to a foreign nation's judiciary and failing to attach a true Indictment, was to bypass the requirement of the "**Dual Criminality**," without which extradition from the Netherlands is impossible.  Ref. Exhibits 3, 4, discussed below.  The circumstances of the case were seriously misstated before the Dutch authorities.

On August 23, 2021, Oleksandr Morgunov (Morgunov), a Ukrainian citizen, was arrested in the airport of Amsterdam by the Dutch authorities per Letter for Provisional Arrest, issued by the U.S. Department of Justice.  Exhibit 1.  Even though Morgunov had a status of a permanent resident in the U.S., he is not—and has never been-- a citizen of the U.S.  Morgunov was heading to Ukraine, where his home country residence is.

On September 10, 2021, the U.S. Department of Justice issued a formal Extradition Request (Warrant), supported by an Affidavit of a trial attorney of the U.S. Internal Revenue Service, which contained a series of defects, addressed below.  See Exhibit 2.

In its applications, the U.S. Department of Justice relied on the Amended Extradition Treaty with the Netherlands, from 2004, a part of the Extradition Treaty with the European Union.  See Exhibits 3-4.

In the Letter for provisional arrest and the Extradition Request, the prosecution, spearheaded by the IRS, provided incomplete and fractional information with material omissions, failed to annex the Indictment against three Ukrainian nationals, on file in the U.S. District Court for the Southern District of Southern District Florida. See Exhibit 5.   On November 10, 2021, the U.S. Attorney's Office published a SI (which is currently subject to a co-defendant's Motion for Bill of Particulars).  See Exhibit 6.

The prior proceedings in the U.S. District Court for Southern District of Florida have revealed numerous shortcomings in the prosecution by the IRS in those related matters.  For example, the U.S. District Court, in three separate cases, *de facto* quashed the Subpoenas issued by the same prosecutorial team and closed the cases.  See Exhibits 7, 8, 9.

**1. Proper Forum in the U.S. District Court for the District of Columbia.**

The U.S. District Court of the District of Columbia is the proper forum for several reasons, even though the underlying prosecution has involved four cases in the U.S. District Court for the Southern District of Florida.

Namely, the prosecution team of the IRS, in charge of those cases in Florida, has its office in Washington, D.C.: Department of Justice, Tax Division, Southern Criminal Enforcement Section, 4 Constitution Square (4CON) 150 M Street, NE, Room 1.204, Washington, DC 20002.  The present forum considers the convenience of that prosecution team located in the District of Columbia.

The Request, dated September 10, 2021, was issued in the name of Ms. Frances Chang, Deputy Director of the Office of International Affairs, Criminal Division, U.S. Department of Justice, with an office in Washington, D.C., at 950 Pennsylvania Avenue NW, Washington, DC 20530.

As well established, the District of Columbia represents the appropriate jurisdiction for adjudicating the issues of interpreting international treaties in which the U.S. is a party and their implementation. All foreign Embassies are located in the District of Columbia (including the Netherlands). This District has special experience in resolving the matters concerning the obligations of the U.S. under the international treaties. Moreover, the extradition warrant documentation, as it turned out, without the Indictment annexed, was substantially disconnected from the case on file in the sister District.

**2. Underlying Facts Relevant for this Motion.**

As mentioned above, Morgunov is a citizen of Ukraine (born in Ukraine in 1986). In 2006, he first came to New York on a non-immigrant exchange visitor program. In 2011, he received permanent resident status in the U.S. According to the U.S. Border Control's data, Morgunov has crossed the U.S. border from and to various destinations 21 times.[1] It did not show Morgunov's latest trip to Mexico, but border crossing data is notoriously incomplete (for example, having zero entries on the trips of co-defendant Volodymyr Ogorodnychuk, who came to Miami on August 29, 2021, to stand trial, and is on bail.)

After 2011, Morgunov did low-pay jobs as a waiter at restaurants, a fisherman on a fishing boat, a florist at a floral shop, and the like. In or about 2017, in addition to his other work as a back bartender and a fisherman, Morgunov started to participate in the staffing services for hotels and restaurants in Key West, Florida, for additional income. Those services were perceived as lawful and routinely provided by other staffing agencies.

---

[1] Data disclosed by the U.S. Justice Department has zero entries on the alleged co-conspirator Volodymyr Ogorodnichuk (Ogorodnichuk), who is currently co-defendant in the same case. Furthermore, there are zero entries on one more purported unindicted co-conspirator, who, according to the SI, at Para 2, had been residing in the U.S. Exhibit 6 (See discussion that Morgunov is not a fugitive, below).

Those staffing services were primarily for the immigrants from Ukraine, who spoke next to no English and needed help with referrals to the hotels and restaurants.  Those establishments routinely prefer to hire janitorial staff and waitresses through recommendations of the staffing agencies instead of looking for the staff by placing hiring advertisements in newspapers.  Markedly, Morgunov has always filed all tax returns prepared by CPAs and paid all due taxes (under $40,000 or even $30,000 for three part-time jobs at the same time).

In March of 2020, Morgunov and his family moved to Sarasota, Florida, about 375 miles away from Key West.  Morgunov found a position at Amazon.  While doing a waiter's and a fisherman's work, Morgunov ended up with little time available for work in the staffing services.  In the present Covid-19 era, Morgunov had family issues back home in Ukraine, and, in August of 2021, Morgunov left for Mexico and then for his country, Ukraine.  As mentioned above, on August 23, 2021, he was arrested at the Amsterdam airport at a transit stopover of his trip to Ukraine.  Morgunov's air ticket for the next flight to Kyiv was lost.  Since that time, Morgunov has been held in the Netherlands, awaiting extradition hearings.  The local Dutch law firm assisting Morgunov is Law & More, legal and tax advisors, with the addresses: De Zaale 11, 5612 AJ Eindhoven, and Amstelveenseweg 500, 1081 KL Amsterdam.

### 3. Morgunov, Ukrainian Citizen, Is not a Fugitive and Has Had no Obligation to Travel to or Stay in the United States; Inapplicability of Fugitive Disentitlement.

Morgunov is not a fugitive from the U.S.; he has never been arraigned or served any process in that criminal case.  Morgunov has not clandestinely or illegally left the U.S.  Other than traffic issues and tickets, Morgunov has no criminal record.  Later, Morgunov learned as though the IRS treated him as a fugitive.  The case law in this Circuit shows such allegations cannot be speculative.  *Durbin v. U.S.,* 221 F.2d 520 (1954).  This Circuit rebutted overreaching by federal prosecutors, reversed and remanded with instruction to dismiss the indictment.

Morgunov relies on the landmark case *In re Hijazi* (C.A. 7, 2009) 589 F.3d 401, where a Lebanese citizen residing in Kuwait has been adjudged not subject to the so-called fugitive disentitlement doctrine.  In that case, the Seventh Circuit ordered the District Court to consider the defendants' motions ("Hijazi is *under no obligation* to travel to the United States, and as long as he does not enter the country, he cannot forcibly be brought before the Central District of Illinois for his arraignment.")  In *U.S.A. v. Siriwan* (C.D.Cal, July 28, 2011), not reported, WL 13057709, the District Court allowed Siriwan to file a Motion to Dismiss the indictment and stay extradition proceedings.  Likewise, in *U.S. v. Kashamu* (N.D.Illinois, July 15, 2010) not reported, 2010 WL 2836727, the Court agreed to entertain Kashamu's motion to dismiss when he was in England, opposing his extradition from the United Kingdom.

In a prominent case where a Ukrainian citizen located in Austria filed a motion to dismiss the indictment, the District Court agreed to consider the motions to dismiss and for other relief and to rule on their merits.  *United States v. Firtash* (N.D.Illinois, 2019) 392 F.Supp.3d 872.

In this instant matter, Morgunov, the Ukrainian citizen, albeit he had got a permanent residency status in the U.S., again, has never been arraigned.  Morgunov has never been served any papers in connection with that criminal case.  Morgunov is not a fugitive.

### 4. Underlying Criminal Case and the Indictment.

The underlying criminal case, captioned *U.S. v. Mykhaylo Chugay, Oleksandr Morgunov, Volodymyr Ogorodnichuk*, was filed on August 17, 2021 21cr10008, in the U.S. District Court for the Southern District of Florida.  See the Indictment with two Counts, Exhibit 5, replaced by SI, based on the same allegations of fact, but adding one more, third Count.  Exhibit 6.

With due respect, that criminal case, prosecuted by the IRS, represents a classic example of selective prosecution.  It is a strange twist of "white collar" prosecutions: the prosecution has

targeted those who have worked most of their lives as janitors, waiters, or fishermen and have never been any employers (hotels and restaurants were the employers).

That selective prosecution involves, in the end, the work of cleaning maids and janitors at hotels and waitresses (rarely waiters) at restaurants in Key West, Florida. The IRS seeks to collect the Federal Insurance Contribution Act (FICA) from the employers.

But instead of going after the hotels and restaurants that might be liable for that tax, as the employers of the cleaning maids and waitresses, the IRS went after three Ukrainians who provided staffing referrals and sometimes themselves worked part-time as janitors and waiters.

Misstating as though those staffing agencies were the employers, which those were not, the IRS, on information and belief, has been avoiding suing the hotels and restaurants, actually the employers. Instead, the prosecutors targeted three Ukrainians with a very modest income, who have paid their taxes, as well as the corporate taxes. Expressly, the IRS has avoided suing hotels, e.g., Radisson, Marriott, etc., and the restaurants, which have notoriously significant assets and could put together large legal defense teams and provide a solid rebuttal to the charges in any courts.

Apart from Chugay and Morgunov, who are citizens of Ukraine with permanent residence status in this country, the third co-defendant, Ogorodnichuk, has been naturalized in the U.S. and now has double citizenship. Despite that Morgunov and Chugay are not U.S. citizens, they are entitled to protection under the 5th Amendment (the Due Process Clause), the 6th Amendment, and the 14th Amendment.[2]

As mentioned above, on August 23, 2021, Morgunov was arrested in the Netherlands upon the letter request of the U.S. Department of Justice. See Exhibit 1. Morgunov's arrest was

---

[2] On August 17, 2021, Chugay was arrested in Miami in his rental apartment, from about 5:30 A.M., and a warrantless search was conducted, the Search Warrant was signed far later, marked at 11:07 P.M., meaning many hours after the search was over.

followed on September 10, 2021, by a Letter Rogatory, annexing the Affidavit of the prosecuting trial attorney, which failed to cite one statute, 18 U.S.C. §1324, in total, omitting that the penalty under that statute could be the death penalty. See Exhibits 1-2.  In the context of other omissions, the Court may infer that such omission was intentional.  On August 29, 2021, Ogorodnichuk traveled from Ukraine to the U.S., Miami, apparently believing he was innocent and turned himself in to stand trial under the Indictment and clear his name.

On November 17, 2021, the Dutch law firm assisting Morgunov sent to the American counsel of Chugay a request to share and exchange evidence.  On December 6, 2021, Morgunov and Chugay concluded, through their representatives, a Joint Defense and Common Interest Agreement, which includes the informed mutual waivers of conflict.  The representation of Morgunov by Chugay's current American attorney, the undersigned, is to cover only the time until Morgunov's extradition issue is resolved.  It can be resolved in two ways, either (i) extradition is quashed, or (ii) objections to extradition are overruled, and Morgunov is ultimately extradited to the U.S.  The undersigned counsel cannot communicate with Morgunov, who is in custody in the Netherlands and can use only documents in the public domain necessary for the present Motion.

## 5. Dual Criminality Requirement under the Convention with the Netherlands Requires Dismissal.

Reference is made to Exhibit 3, at p. 177, which provides the extradition exemption clause between the U.S. and the Netherlands, mandating the so-called "Dual Criminality" mandatory requirement.

<u>ARTICLE 2: Extraditable Offenses and Jurisdiction</u>

"1. Extraditable offenses under this Treaty are:

a. Offenses referred to in the Appendix to this Treaty which are **punishable under the laws of both Contracting Parties**;

b. Offenses, whether listed in the Appendix to this Treaty or not, provided they punishable under the Federal laws of the United States of America and the laws of the Kingdom of the Netherlands.

In this connection, it shall not matter whether or not the laws of the Contracting Parties place the offense within the same category of offenses or denominate an offense by the same terminology".

Ibid, Exhibit 3, p. 177, Exhibit 4, p. 5.


**6. Letter from DOJ Omitted that a Statute under Which Morgunov Is to Be Extradited Is Not Listed under the "Dual Criminality" Clause and Allows Capital Punishment.**

Reference is made to the Letter of the Office of International Affairs, the DOJ, to the Dutch authorities, of August 23, 2021.  Exhibit 1.

In the third from the last paragraph, the OIA's Letter says: "The offenses with which Oleksandr Morgunov is charged are covered by… Items 16, 18, 22 and 36 of the Schedule of Offenses, appended to the Annex."

However, Item 18 is offenses "**RELATING TO SLAVERY OR THE ILLEGAL TRANSPORTING OF PERSONS**."   (*Nota bene*: illegal transporting is understood, internationally, as human trafficking).

That has nothing to do with Count 1 of the Indictment or the SI, which, instead, charged "*Conspiracy to Harbor Aliens and Induce them to Remain*," but which article does not exist in the Criminal Code of the Netherlands.  Exhibit 12.  Under Count 1, extradition from the Netherlands is impossible.  The term "slavery" represents a highly prejudicial, stigmatic approach by the prosecutor, without regard to the Indictment.

Morgunov respectfully emphasizes that the reference to that item is material misrepresentation by the prosecuting attorneys of the DOJ's OIA division to the Dutch

authorities.   Nowhere in the Indictment or *SI was there any allegation of "slavery or illegal transporting of persons*."   Of course, a unique, unspeakable citation of "slavery," a repugnant type of crime, surely prosecutable in the Netherlands, made an enormous impact upon the weight of the Letter seeking the arrest of Morgunov.   However, no allegations of "slavery or illegal transporting of persons" exist in the Counts in the Indictment, the SI, nor has anything to do with the underlying cause.   Exhibits 3, 4.

The review of four related cases in the sister District Court, to wit 21cr10008, 20mc25171; 20mc25172, or 20mc25174, shows no such allegations by the Government, nor could be, as there was no basis whatsoever.   Exhibits 5, 6, 7, 8, 9.

Markedly, the Government's filings in those cases show that there were no allegations of "slavery" or "illegal transporting of persons."   The Response to the Government's explanations, reduced to a Table on a co-defendant's Motion for Bill of Particulars, shows that the Government's references to the evidence it had produced such as documents or audio recordings have nothing to do with "slavery" or "illegal transporting of persons."   Exhibit 11.

Citing from that statute, 8 U.S.C. Section 1324, the Letter of the OIA, DOJ, and then the formal Extradition Request also failed to disclose that this statute allows imposition of a death sentence, which is of fundamental importance for the Netherlands.   The provision in that statute provides for capital punishment, outlawed in the Netherlands, see below.

### 7. Court Should Sua Sponte Order the Government to Show Any Evidence of "Slavery" or "Illegal Transporting of Persons," As Represented Before the Dutch Authorities.

Morgunov respectfully submits that the Letter, referring to Item 18, "**Slavery**" and "the **Illegal Transporting of Persons**," is a gross misrepresentation made by the Office of International Affairs to the Dutch authorities to improperly enhance the chances of Morgunov's extradition at the expense of the truth.

The Court should issue to the Office of International Affairs an Order to Show Cause, to cite the evidence supporting the allegations of "*slavery*" or "*illegal transportation of persons*" against Morgunov in the underlying case, case 21cr10008.

Morgunov reasonably predicts that the prosecuting counsel will produce no evidence supporting the OIA's statement to the Dutch authorities as though the alleged offenses related to "slavery" or "illegal transporting of persons."

Such misrepresentation represents prejudice and stigma for Morgunov; "slavery" or "illegal transporting of persons" are a highly despicable category of allegations per se.

If the Court concludes that the OIA's submission to the Hague on behalf of the DOJ had no basis for misrepresentation regarding "*slavery*" or "*illegal transporting of persons,*" this Court does not need to go any further.

That misrepresentation made, by diplomatic channels, to a foreign sovereign would be enough for this Court to summarily enter a sanction against OIA of quashing the extradition proceedings concerning Morgunov.

The alleged misrepresentation, improperly referring, without basis, to the striking, despicable, and stigmatizing offenses related to "slavery" or "illegal transporting of persons" to the Dutch authorities, should not be tolerated.  Otherwise, this puts on the line the reputation of the extradition requests from the U.S. and, generally, will cast a shadow upon the integrity of representations on behalf of the IRS, seeking to extradite, as in this case, a Ukrainian national.

**8. Statement on August 23, 2021 Morgunov's "Willful Tax Evasion" Has No Basis.**

 The Letter from August 23, 2021, also provided the Dutch authorities an inapplicable reliance on Item 22, "Offenses relating to willful evasion of taxes and duties."  See Exhibit 1, p. 1, Exhibit 3, at p. 17.

However, Morgunov had filed in the U.S. all his tax returns, even though he had an option to file his tax returns in Ukraine.  Morgunov can disclose those tax returns, showing relatively modest income while doing three part-time jobs to support his family.  At no point in time did the prosecuting authority, IRS, send Morgunov any audit notices or any indication of any issues with Morgunov's taxes.  The IRS should be disallowed to make stark allegations of "willful evasion of taxes and duties" and seek extradition of a foreign national from overseas when it had never bothered even to send a notice of intent to audit his tax returns.

As to the corporate tax returns in the names of four entities mentioned in the Indictment or the SI, Morgunov had no involvement with their taxes whatsoever.  All corporate taxes were prepared by a certified public accountant (CPA).  Morgunov had nothing to do with their preparation and never met the CPA doing the corporate taxes.

Moreover, Morgunov has never physically seen or held in his hands any corporate tax returns implied in the SI.  All of that was within the IRS's knowledge: Morgunov had no involvement in any corporate tax submissions.

The Court should rule that under those circumstances, the Government's pointing to on Item 22 'Offenses relating to willful evasion of taxes" was baseless against Morgunov and represents one more ground to quash these extradition proceedings.

The drastic sanctions of quashing the extradition warrant are the only possible remedy for this situation. The prosecution willfully misrepresented to the Dutch authorities that Morgunov is wanted in the US for slavery or human trafficking, which influenced the Dutch authorities and courts in their decision to arrest Morgunov without a possibility of bail.

### 9. The Extradition Warrant of September 10, 2021, Involved Omission of Material Facts.

The cover letter to the Affidavit of IRS's trial attorney in support of the Extradition Warrant says that it was sworn before the U.S. Magistrate Judge on August 30, 2021, who is,

along with the U.S. District Judge, presiding in the case *U.S. v. Chugay, Morgunov, Ogorodnichuk*, case 21cr10008.

However, that Affidavit <u>has never been filed</u> in the Court.  If not for the ongoing judicial procedures in the Netherlands, it would be impossible to get on Pacer its copy.

Markedly, the Affidavit failed to enclose the Indictment, which is a standard *modus operandi* for extradition requests.  That was, as Morgunov submits, improper and prejudicial to him because the Indictment is the critical prosecutorial instrument, based on which the Dutch Courts could draw their conclusions on the merits and the contradictions with the representations made in the extradition requests.  Compare Exhibits 1, 2, and 5.

Instead of providing the Dutch authorities the Indictment, the Affidavit provided the trial attorney's imprecise version of the Indictment together with his opinions about the facts of the case against Morgunov.

Furthermore, the prosecutor's Affidavit states in the caption of the case only one defendant, Morgunov, instead of three, which is incorrect or somewhat misleading as to the actual case against three defendants.  Compare Exhibits 2 and 6.

That submission and the Affidavit failed to disclose that the U.S. Government intends to impose on Morgunov, as on Chugay, as it turned out, a tax liability of $9.5 million.  Most countries entering the Extradition Treaties decline to assist the requesting country's objectives in increasing the budgetary tax revenues <u>from citizens of third countries</u>.  Under the common law, it is well established that no country is obligated to extradite third-country citizens for the requesting treasury's authorities to fill in the government's revenue coffers.

The Indictment's omission goes hand-in-hand with another disturbing point in the representations made to the Dutch authorities.  See Exhibit 2.

Quoting from 8 U.S.C. Section 1324, the IRS's prosecuting attorney failed to submit the complete text of that statute, stopping the citation midpoint, omitting information that that statute allows a death sentence to be imposed.  With reference to PDF page 21 of Exhibit 2 (pages are not numbered in the original), the citation is stopped with the words "shall be fined ... or imprisoned for not more than 20 years, or both."  The ellipsis and the end quotes are missing, as though that is the end of the statute's text.

However, instead, the statute's text is continued with the most consequential provision, as follows:

"(iv)in the case of a violation of subparagraph (A)(i), (ii), (iii), (iv), or (v) resulting in the death of any person, **be punished by death** or imprisoned for any term of years or for life, fined under title 18, or both."

That omission is of paramount importance for Morgunov because it contradicts Article 114 of the Dutch Constitution (Dutch: Grondwet), which prohibits capital punishment and excludes the extradition of people who might face the death penalty.  The exact provision in the original Dutch, "*De doodstraf kan niet worden opgelegd*," translates to "The death penalty cannot be imposed."  The Netherlands refuses to extradite persons who can be sentenced to death.

Switching, at will, the threatened penalties and liabilities against a defendant is not inconsistent with the prosecutorial conduct towards Chugay, Morgunov's co-defendant. Chugay's attorneys have received the prosecutors' writings, proposing to admit a $9.5 million debt to pay to the IRS and threatening Chugay, unless he plea-bargained, with demanding from the Court an extraordinarily long sentence, comparable to what could be proper for murderers.[3] Should at any point a prosecutor discover, for example, that some waitress, if she had met

---

[3] The target of demands of a plea-bargain by the prosecutors, Chugay has since been asking for therapeutical doctor's assistance in the detention center in Key West, Florida, where he is held.

Morgunov and used a staffing referral, dies from Covid-19 or someone slipped and fell serving

dishes, then the prosecutor could indict Morgunov under part (iv).  As cited above, part (iv) only

requires some connection, given the extensive causal word "resulting."  Then, surprise, the

prosecutors will be in a position to seek capital punishment.

With regard to the Netherlands, the applications from the prosecuting authorities

concerning Morgunov should have revealed that the IRS is demanding to pay $9.5 million to the

U.S. Treasury.

However, revenues to the national Treasury of the U.S. demanded from the subjects of

extradition are not a sound basis for the extradition of the citizens of third countries, such as

Ukraine.  Extradition should not be used as an instrument to coerce collecting money from

foreign nationals.  In any event, the revenue-raising objectives of extradition must have been

disclosed in the applications, which those were not.  See Exhibits 1, 2.

Of course, in the real-life, neither Morgunov nor Chugay has $9.5 million, which is an

astronomical and absurd amount for people's very modest income (income less than $40,000 or

$30,000 a year, just to make ends meet).  Like Morgunov, Chugay has also invariably filed

individual and corporate tax returns and had all taxes paid to the IRS.  Having brought the

underlying cause, the IRS, at the bottom, has been wasting public resources, with absolutely no

prospective to confiscate or collect anything for the U.S. Treasury.

Allowing the IRS to pursue the extradition of Morgunov, the Ukrainian citizen, for fiscal

purposes, should be looked into if that is a proper or improper exercise of the Government's

powers to use extraditions, which should multi-nation conventions' avenue be used in limited

circumstances.  Unless Morgunov's extradition is stopped, it can receive bad publicity for the

IRS in the Netherlands.

**10. Government's Prohibition to Co-Defendant in the Joint Criminal Case to Share Evidence with Co-Defendant in the Netherlands Should Be Held Unconstitutional.**

The Government has also prohibited Chugay and Morgunov from exchanging evidence supporting their defenses.

Under the Due Process Clause of the U.S. Constitution's Fifth Amendment, a defendant should not be restricted, as a general proposition, access to the evidence against him (no one shall be "*deprived of life, liberty or property without due process of law*.").

At present, Morgunov is deprived of liberty, per application of the OIA.  However, as part of the deprivation of liberty, Morgunov is nonetheless entitled to Due Process.  That, naturally, includes the right to share evidence with the co-defendant(s) in the joint criminal cases and, generally, obtain evidence from any source worldwide.

The Government's prohibiting that the Co-Defendants Morgunov and Chugay share or exchange evidence will likely defeat the extradition on its own but, in any case, will put the procedures used by the OIA in disrepute.  Again, Morgunov is a citizen of Ukraine, as Chugay is.  The Netherlands and Ukraine are the party members of the European Convention of Human Rights, signed in 1950, in force for the founding members, like the Netherlands, since 1953.  The U.S. is not a member of that Convention.

Under the European Convention of Human Rights and its subsequent Protocols, a refusal by a country claiming extradition to allow the sharing of the evidence by the arrestee with the co-defendants in the same joint cases goes contrary to the basics of human rights.

Unless this Court quashes the Extradition Warrant, the Dutch Courts will likely not take well the prohibition that Morgunov exchange the evidence with a co-defendant held in the U.S.

Additionally, Morgunov's rights may be protected by the European Court of Human Rights.  That Court, with a seat in Strasbourg, oversees violations of the European Convention of Human Rights and issues orders mandatory to the participating country, the Netherlands.

The 2003 Extradition Treaty with the European Union and the 2004 Amended Extradition Treaty with the Netherlands do not show any provision prohibiting the co-defendants in the same criminal cases to share the evidence.  Exhibits 3, 4.  This Court should consider that the Extradition Warrant contained not one but a series of defects.

### 11. Possible Reliance of Prosecuting Counsel on the Fugitive Disentitlement Statute Would Be Misplaced.

The Government will likely invoke the Fugitive Disentitlement law as a basis for prohibiting Morgunov access to the evidence available to the co-defendant.  That statute, however, is inapplicable; it concerns "civil forfeiture" or "third party proceedings in any related criminal forfeiture action."  That has no application here, at least for two grounds.  First, this is not a civil forfeiture case.  No criminal forfeiture is triggered until a conviction resolves the criminal case.  Furthermore, the statute is about "the resources of the courts."  Not a word is written that any restrictions apply to private parties, particularly co-defendants, whose interests are aligned and should be free to cooperate in staging their defenses.

Furthermore, as the undersigned learned, Morgunov left the U.S. lawfully, he passed the U.S. Border Control.

How can a person be called a "fugitive" if the U.S. Border Control passes him out of the country?  The Court should conclude that fugitive disentitlement has no application to Morgunov, a Ukrainian national.

### 12. Superseding Indictment Misapplied the Statute 8 U.S.C. 1324, Instead of Section 1324a, Allowing a Maximum 6 Months Penalty or Fine of $3,000.

Based on the SI, which is as broad, vague, and imprecise as it could get, and the interviews with the witnesses, at most, what Morgunov could be convicted of—if the Government proves its case—is a violation of Subsection 1324a(f).  That is a different statute,

not useable for extraditions, for which a threshold of more than one-year imprisonment is required.  Reference is made to the Government's Manual.[4]  Since the Manual has been issued in Washington, D.C., this Court may take judicial notice of it. To quote from that Government's Manual:

> "Subsection 1324a(f) provides that any person or entity that engages in a "pattern or practice" of violations of subsection (a)(1)(A) or (a)(2) shall be fined not more than $3000 for each unauthorized alien with respect to whom such a violation occurs, imprisoned for not more than six months for the entire pattern or practice, or both. The legislative history indicates that "a pattern or practice" of violations is to be given a commonsense rather than overly technical meaning, and must evidence regular, repeated and intentional activities, but does not include isolated, sporadic or accidental acts. H.R.Rep. No. 99-682, Part 3, 99th Cong., 2d Sess. (1986), p. 59. See 8 C.F.R. § 274a.1(k). A scheme for civil enforcement of the requirements of § 1324a through injunctions and monetary penalties is set forth in § 1324a(e) and § 1324a(f)(2)."

These guidelines should be dispositive.  Instead, the Indictment and then the SI cited §1324(a)(l)(A)(v)(I), as it turned out, to claim 15 years of years imprisonment.  The SI misses the tests necessary for applying §1324 instead of §1324a that is applicable.  The IRS in the SI pleads a wrong statute instead of §1324a.

Section §1324, as interpreted by the Eleventh Circuit, also means that in addition to employment, the defendant(s) was/were to be providing housing, which facilitated the aliens' ability to remain in the U.S.  (There have never been any allegations of illegal transporting any persons).  The Court considered whether tax forms/returns were regular, whereas Morgunov filed tax returns on time.  See  *U.S. v. Zheng*, C.A.11 (Fla.) 2002, 306 F.3d 1080, certiorari denied 538 U.S. 925.  In that case, "…The Government showed that the Appellees harbored the illegal aliens by providing both housing and employment which facilitated the aliens' ability to remain in the United States illegally" (Ibid, at *1086).  As opposed, there are no allegations as though

---

[4] See URL: www.justice.gov/archives/jm/criminal-resource-manual-1908-unlawful-employment-aliens-criminal-penalties.

Morgunov had provided housing to any illegal aliens for commercial gain.  Nor is another test met (in that case, the defendant was "…employing those aliens and paying lower wages, on average, $4.00 an hour for ten hours each day of work.)."  Ibid, at *1086.  As opposed, the Government's allegations in this case instead reveal quite regular hourly rates, presuming *bona fide* staffing services and house cleaning and waitressing work.

Given the SI's failure to be specific and the failure of sufficient facts, harboring used by the Government in SI is against the interpretation and intent of Congress (Exhibit 11) and the common understanding of what "harboring" means:

> "(p. 1436): …it is absolutely essential if we are to adequately deal with these racketeers who are concealing aliens by the hundreds all over the United States. That is the crowd we are trying to do something about. We are thinking in terms of the man who sits back in the interior of the United States where there is a big steel mill and does no work, yet exacts a tribute from people he is harboring and concealing under the threat of exposing them if they do not contribute to him. That is the man we are thinking about. We are thinking about the professional gangster, if you please, who has hundreds of these people concealed in very convenient places."

Ibid, Exhibit 10, Congressional Records, 82th Congress, Volume 98-part 1.

A well-established principle of statutory construction requires that courts, whenever possible, interpret statutes in a manner that avoids constitutional difficulties. See *Frisby v. Schultz*, 487 U.S. 474, 483, 108 S.Ct. 2495, 2501, 101 L.Ed.2d 420 (1988). (To the extent that lower courts endorse a broad reading of legislative enactments, they run "afoul of the well-established principle that statutes will be interpreted to avoid constitutional difficulties."). See *also Cable Holdings of Georgia, Inc. v. McNeil Real Estate Fund VI, Ltd*., 953 F.2d 600, 604 (11th Cir.), cert. denied, 506 U.S. 862, 113 S.Ct. 182, 121 L.Ed.2d 127 (1992). (The court will closely scrutinize, and avoid whenever possible, a district court's "interpretation of a federal statute which raises serious constitutional problems or results in an unconstitutional construction."); *United States v. Brown*, 731 F.2d 1491, 1494 (11th Cir.1984) (selecting a narrow

interpretation of a statute to avoid an unconstitutional construction). See *Federal Election Comm'n v. Florida For Kennedy Comm*., 681 F.2d 1281, 1287 (11th Cir.1982) ("Courts are under the duty to avoid, if possible, construing a statute in a manner that creates constitutional problems."). See *Manrique Carreno v. Johnson* (S.D.Fla, 1995) 899 F.Supp. 624.

The *Zheng* case summarized the conduct to which a ten-year penalty could apply: "…Congress amended the Illegal Immigration Reform and Immigration Responsibility Act of 1996 ("IIRIRA"), Pub.L. 104–208, 110 Stat. 3009–565, to provide the increased penalty of ten years for a violation of § 1324(a)(1)(A)(i), (ii), (iii), or (iv) (offenses relating to alien smuggling, harboring, inducement, or transportation) done for the purpose of commercial advantage or private financial gain." Ibid, *Zheng*, at 1086. None of the alleged misconduct, considering the record, falls under the summary in the *Zheng* opinion.

The SI did not allege as though Morgunov had smuggled any aliens. Morgunov did not harbor them; he did not induce or illegally transport any waitresses for restaurants or housekeepers or remain in the U.S.

The Government intends to shift the responsibilities of restaurants and hotels on him. Morgunov asserts he did not violate any laws. In this case, the SI does not show intent other than generalities; the prosecutors did not and cannot show *mens rea*.

### 13. Issue that the Government Incorrectly Substituted 18 U.S.C. Section 1324a by Section 1324, Converting Penalty From up to 6 Months up to Capital Punishment.

The discussion of the element of a conspiracy, the agreement, is incorporated here by reference. The SI's Count 1, charging conspiracy, was pleaded exceedingly vaguely, who conspired with whom, when with a date, where, how it was done: if in writing, then what writing, if orally, the dates of such communications, presumably with an audio recording or some evidence fit to be beyond a reasonable doubt.

That vagueness has been used to substitute the applicable statute.  The switch of the applicable statute has fundamental importance for Morgunov because the permissible penalty falls back from the maximum of up to 10 years to up to **6 months**.  To refresh, Section § 1324a, 'Unlawful employment of aliens,' prescribes only up to 6 months.[5]  Extradition for offenses punishable up to 6 months is not subject to extradition (which requires more than one year), denying extradition for alleged offenses punishable by one year or less.  Exhibits 3, 4.

Instead of the prosecutors' desire to confiscate $9.5 million from Morgunov, the maximum he would be subject to is up to a $3,000 fine per alien.  Morgunov is a common, hard-working young man, raising with his wife a child.

In one recent case, the court cautioned against the overzealous law enforcement actions.  See *Club Madonna, Inc. v. City of Miami Beach* (S.D.Fla, 2020) 500 F.Supp.3d 1304,  ("It is clear that Congress intended to exempt casual hires from the Immigration Removal and Control Act. See H.R. Rep. No. 99–682(1), at 57, 1986 U.S.C.C.A.N. 5649, 5661 ("It is not the intent of this Committee that sanctions would apply in the case of casual hires (i.e., those that do not involve the existence of an employer/employee relationship").  The Court agreed with the Third Circuit's Lozano v. City of Hazelton analysis.  See Ibid, *Club Madonna*.

**14. Conspiracy Was not Pleaded Specifically, Whereas that Was Responsibility of Restaurants and Hotels, as Employers, to Verify and Pay Employment Taxes.**

The Indictment was withheld from the Dutch authorities for another reason: it was objectively vague, imprecise, and unclear under any standards. The lack of specificity was prejudicial.  Morgunov was not responsible for employment taxes that the restaurants and the

---

[5] "(f) Criminal penalties and injunctions for pattern or practice violations.  (1) Criminal penalty. Any person or entity which engages in a pattern or practice of violations of subsection (a)(1)(A) or (a)(2) shall be fined not more than $3,000 for each unauthorized alien with respect to whom such a violation occurs, imprisoned for not more than six months for the entire pattern or practice, or both, notwithstanding the provisions of any other Federal law relating to fine levels."

hotels may or may not have paid to the IRS.  Most of the time in the U.S., Morgunov worked low-pay jobs.

Morgunov has never been an employer.  The employers were the restaurants and the hotels responsible for paying employers' tax.  Those claims must have been raised and prosecuted between them, the employers (hotels and restaurants), and the IRS.  The statute proscribing harboring an illegal alien could be applied to an employer; Congress intended the statute to apply to employers.  *U.S. v. Kim*, C.A.2 (N.Y.) 1999, 193 F.3d 567.

The case law on Section 1342a that should apply shows that the restaurants and the hotels have been responsible for verifying the status of the waitresses and cleaning maids.  The Second Circuit noted that employers should cross-examine backpay applicants concerning their immigration status.  See *N.L.R.B. v. Domsey Trading Corp*., C.A.2 2011, 636 F.3d 33.  See also *Kechkar v. Gonzales*, C.A.10 2007, 500 F.3d 1080, ("And we see nothing in the record indicating that Kechkar showed "clearly and beyond doubt" that he did not check the box. See 8 U.S.C. §1229a(c)(2)(A).").  Without more specifics, Morgunov is prejudiced in that extradition sought without factual allegations of what he supposedly did, his acts, or failures to act because, as argued elsewhere, the allegations will fall under the Dual Criminality exception because the Netherlands does not prosecute such charges.

As the Ninth Circuit decided, undocumented alien workers are not excluded from NLRA's definition of "employees" eligible to vote in union representation elections.  See *N.L.R.B. v. Kolkka*, C.A.9 1999, 170 F.3d 937.  See also the Seventh Circuit's opinion *Del Rey Tortilleria, Inc. v. N.L.R.B*., C.A.7 1992, 976 F.2d 1115.

In the SI, the prosecutors have noted that Morgunov overstayed his initial visa (but silencing that later, he was granted the permanent residency status, "the green card").  However, many years ago, overstaying the status does not make the subject person a criminal; it is

irrelevant for any of the Counts in the SI.  See a recent ruling in *Larreal v. Telemundo of Florida, LLC*, S.D.Fla.2020, 2020 WL 5750099.  In that case, the Club worker's immigration status as an undocumented overstay precluded his recovery of lost future earnings from a news organization. In that case, "Plaintiff Merwin Alexander Garcia Larreal is a Venezuelan citizen who overstayed his six-month visa to the United States and therefore became undocumented on August 6, 2016.

Nevertheless, he illegally lived and worked in the United States after that date. Larreal worked as a head waiter at LaBare, an adult entertainment club featuring male dancers."  Larreal had a history of encounters with law enforcement in connection with drug raids, unlike this case. Yet, the defendant was released, and he immediately returned to his undocumented job on the same day.  Ibid, *Larreal*.

Fulfilling a counsel's obligation, the undersigned points to a contrary ruling in a case, *Veliz v. Rental Service Corp. USA, Inc*. (M.D. Fla, 2003) 313 F.Supp.2d 1317. However, according to Westlaw, that case triggered 13 cases with negative treatment one way or another. See *Hernandez v. Altec Environmentalproducts LLC* (S.D.Fla. Nov. 23, 2011, WL 13108059) ("…evidence would be unfairly prejudicial, would lead to confusion of the issues, and would mislead the jury. Fed. R. Evid. 403. See *Maldonado*, 789 So. 2d at 470 (the illegal alien status was improperly admitted because it made the plaintiff's citizenship "the focus of the jury's attention," and not his residency). See *Cf. O'Neil v. Gilbert*, 625 So. 2d 982, 983–84 (Fla. Dist. Ct. App. 3d Dist. 1993) (witness's immigration status was not probative of her credibility").  In two cases, the *Veliz* case was subject to negative treatment.  See *Landi v. Home Depot USA, Inc*. (M.D.Fla) 2019 WL 4644243; see *Alvarez v. General Wire Spring Co*. (M.D.Fla, 2009) 2009 WL 248264.

The Government's pleading harboring in the Indictment was not disclosed to the Dutch authorities and was wildly off the mark. In addition to interpreting what constitutes harboring,

opposing the Government's view, it is worthwhile to go to the roots of the recognized sources, what the established dictionaries say.  The definitions of harboring are proffered to be filed in exhibits, from the Merriam-Webster Dictionary, the Cambridge Dictionary, the Collins Dictionary, etc.  None of those dictionaries say what the Government says in the Indictment or the SI about harboring.  There is no such thing as the recognized dictionaries for the rank-and-file people and a separate dictionary of prosecutors.

Even the Black Law Dictionary does not say what the prosecutors said in that matter. The Black Dictionary cites cases, showing some clandestine elements into the definition of harboring.  For example: "to clandestinely shelter, succor, and protect improperly admitted aliens." *Susnjar v. U. S., C.C.A.Ohio*, 27 F.2d 223, 224.

Explaining "harboring" can be found in 18 U.S. Code § 1381, 'Enticing desertion and harboring deserters.'  That federal statute also uses the term "harboring" in a sense different from what the Government pleaded, again, requiring that issue, facts showing true harboring, which has no basis whatsoever.

### 15. Missing Specificity of the Indictment and Superseding Indictment Making it Fundamentally Defective Is Supported by Case Law from Various Circuits.

The proper remedies for the law enforcement going after undocumented labor can be going after the business licenses, rather than individual violators, former housekeepers at hotels. See the discussion in *Chicanos Por La Causa, Inc. v. Napolitano* (C.A. 9, 2009) 558 F.3d 856. Those businesses would be primarily responsible for the taxes, verification of work permits, prospective employees' resumes, etc.  Markedly, the SI did not mention any hotels or restaurants, which should be the targets.

The Indictment and then the SI[6] mentioned the documentation for hiring, but it misses to indicate that such documentation was required, back-to-back, by the restaurants and hotels. In that regard, there is case law on distinction concerning the Employment Eligibility Verification Form (I-9 Form). The INS distinguished "substantive" violations and "technical or procedural" violations in a common-sense manner. See *Ketchikan Drywall Services, Inc. v. Immigration and Customs Enforcement*, (C.A.9 2013) 725 F.3d 1103. Moreover, one Circuit has said that even an unauthorized alien may work for hire under certain circumstances. It addressed a plain language of "…a regulation, stating that "an alien will not be deemed to be an 'unauthorized alien,'" which does not provide an alien with status, but merely allows an employer to hire an alien legally, whether admitted or not, while his application is pending." See *Guevara v. Holder*, C.A.9 2011, 649 F.3d 1086.

The SI's omissions of the names of the hotels and restaurants are telling a volume. Instead of going after those hotels, e.g., Radisson the like, with inhouse general counsel's staff, or restaurants that can stage strong defense teams, one observes a classical case of selective prosecution, going after relatively poor people, markedly with no property to confiscate. See also *Ketchikan Drywall Services, Inc. v. Immigration and Customs Enforcement*, C.A.9 2013, 725 F.3d 1103. Has the IRS charged any CEO of any large hotel in Southern Florida? To the best of Morgunov's knowledge, that has not happened.

One Circuit acknowledged that the employers were entitled to a hearing on a notice of an intended fine. *KPMG Peat Marwick of Puerto Rico v. U.S. I.N.S.*, C.A.1 1991, 943 F.2d 91.

Demonizing the staffing agency's facilitators and using extraditions' requests seeking foreign citizens to come to the U.S. has no support in case law. For example, one District Court

---

[6] The SI became largely repetitive of the Indictment, albeit adding one more statute. There were no new fact and there was no basis, whatsoever, why that statute had not been pleaded in the original Indictment, instead convocating grand jury yet again.

showed leniency: a worker, an unauthorized illegal alien employed by a subcontractor, was <u>not</u> precluded from recovering for economic losses, in action against homeowners, seeking to recover damages for injuries he sustained, even when he was prohibited from working in the U.S.  See  *Berdejo v. Exclusive Builders, Inc*., M.D.Pa.2011, 865 F.Supp.2d 617.

Another Court discussed an alleged violation of the civil rights of an undocumented worker.  See *E.E.O.C. v. Restaurant Co*. (D.Minn, 2007) 490 F.Supp.2d 1039.  ([1] assuming that employee was an undocumented alien, she nonetheless had standing to pursue her federal civil rights claims; [2] fact issue existed as to whether the alleged harassment was sufficiently severe and pervasive to alter a term, condition, or privilege of employment).

In a recent federal appellate authority, relating to the relevant Section, the Sixth Circuit ruled quite favorably as to an undocumented alien worker. See *Torres v. Precision Industries, Inc.,* C.A.6 2021, 995 F.3d 485.  An application for extradition of a Ukrainian does not sit well along the line of cases.  That all allows concluding that the IRS's efforts, targeting Ukrainians with an income close to the poverty levels, without any prospective to collect anything are an improvident use of public resources and are misdirected.

In a notable example, Ogorodnichuk, one of the three defendants, who voluntarily went to Miami, as it turned out, had no disposable assets to pay for an attorney.  Ogorodnichuk could not afford a private attorney and was provided a public defendant.

**16.  The Indictment and the Superseding Indictment Failed to Plead the Elements of the Crime of Conspiracy that Must Be Charged and Proved Beyond Reasonable Doubt.**

Morgunov relies on the U.S. Supreme Court's authority that elements of a crime must be charged in an indictment and proved to a jury beyond a reasonable doubt.  See *U.S. v. O'Brien* (2010) 560 U.S. 218, followed by a long line of cases saying the same.

Under F.R.Cr.P. Rule 7(c)(1), an indictment must be a "*plain, concise, and definite written statement of the essential facts constituting the offense charged*[.]"  Markedly, the Extradition Warrant of September 10, 2021, failed to attach the Indictment.  Morgunov submits that the Indictment and the SI failed to satisfy these tests; those were not definite and failed to plead essential facts constituting the offense charged.  Exhibits 5, 6.  Specifically, the IRS failed to plead the essential element of the conspiracy: an agreement.  Any agreement (or contract) has a date when it was made; pleading an agreement should be with sufficient definiteness, starting from when—with dates-- it was made.

With regard to all three Counts in the SI, pleading conspiracy, the courts have said that essential elements of conspiracy are (i) an **agreement by two or more persons** to commit an offense against United States and (ii) an overt act by one of them in furtherance of the conspiracy.  See *U.S. v. Isaacs* (C.A. 5, 1975) 516 F.2d 409.

One Circuit has articulated a three-part test to determine the sufficiency of an indictment: "An indictment is sufficient if it: (1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy..."  See *U.S. v. Steele*, 178 F.3d 1230, 1233-34.  An indictment tracking the language of the statute is sufficient but "as long as the language sets forth the essential elements of the crime." *U.S. v. Yonn*, 702 F.2d 1341, 1348.  The courts have cautioned on the essential elements of an offense, here of a conspiracy, that must be pleaded with sufficient details.

Specificity is significant extradition proceedings, and the Requested authorities should be adequately informed with particularity. A person may only be prosecuted for crimes mentioned explicitly in the extradition request. Using vague and imprecise terms, the prosecutors attempt to

create an opportunity to charge Morgunov under a great variety of crimes, which also weighs in

favor of quashing the Extradition Warrant.

**17.  Indictment and Superseding Indictment Failed to Contain an Essential Element of the Crime: Agreement to Conspire with Criminal Intent.**

Both the Indictment and the Superseding Indictment pleaded only conspiracy offenses.  A

quintessential statute concerning a conspiracy, SI's Count 3, with which it is practical to start the

analysis.  The SI charged:

> "Beginning in August 2007 and continuing through at least August 17, 2021,
> within the Southern District of Florida and elsewhere, the defendants,

> M YKHAYLO CHUGAY and

> OLEKSANDR MORGUNOV,

> O.O., O.Y., Ogorodnychuk, and others, both known and unknown to the Grand
> Jury, unlawfully, intentionally, and knowingly did conspire, combine,
> confederate, and agree together and with each other to defraud the United
> States…."

When that agreement to conspire took place, preferably with the date(s), who exactly,

where, the exact subject matter of an agreement, etc., all was missing in that ambiguity of a

pleading.  Again, it is well established that an agreement is an essential element of a conspiracy

in the context of Section 371.  See *U.S. v. Isaacs*, 516 F.2d 409 (essential elements of conspiracy

are an agreement by two or more persons to commit an offense against the U.S. and an overt act

by one of them.)

The Supreme Court has cautioned the Government and the courts: "It is elementary that

neither association with conspirators nor knowledge of illegal activity constitute proof of

participation in a conspiracy…." *U.S. v. Falcone*, 311 U.S. 205...  The elements of a conspiracy

are an agreement by two or more persons to combine efforts for an illegal purpose and an overt

act by one of the members in furtherance of the agreement. *Nelson v. U.S.*, 5 Cir. 1969, 415 F.2d

483; *Castro v. United States*, 5 Cir. 1961, 296 F.2d 540; *Duke v. United States*, 5 Cir. 1956, 233 F.2d 897." *Roberts v. U.S.* (C.A. 5, 1969) 416 F.2d 1216.

The Government's responses to inquiries and references to the production of documents show that the SI's pleading the conspiracy was exceedingly vague and did not explain Count 3. See Exhibits 5, 6. Morgunov submits, again, that no such agreement to defraud the United States ever took place. Morgunov submits furthermore that he never conspired with anyone to violate any laws of the U.S.

Not surprisingly, the Government has failed to address the specifics of the agreement between Chugay and Morgunov: when the agreement was made, no copies of such an agreement if in writing referred to, no voice recording if recorded, or other concrete evidence of the agreement they made. The disclaimer is made that oral agreements should be of limited use, given the "beyond a reasonable doubt" requirement, and should be corroborated with concrete evidence, not merely speculations.

All three Counts are based on some conspiracy that augments the showing that the case for which the OIA sent the extradition warrant was on thin ice, where the pleadings did not show: (i) when (ii) where (iii) under what circumstances Chugay and Morgunov reached such an agreement and (iv) what were the contents. If there was an agreement, it must be properly described with these specifics. Extradition, particularly requested on behalf of the IRS, must not be used in a fishing expedition of the Government for specifics of a conspiracy.

### 18.  Money Laundering Conspiracy Pleaded in Superseding Indictment, Failure of Essential Element, Agreement to Engage in Money Laundering.

A conspiracy to commit money laundering, under Count 2, is pleaded in the Indictment and the SI (the preceding Indictment being effectively undisclosed or concealed from the Dutch authorities). That pleading states:

"23. Beginning in August 2007 and continuing through at least August 17, 2022, within the Southern District of Florida and elsewhere, the Defendants,

MYKHAYLO CHUGAY,

OLEKSANDR MORGUNOV, and

VOLODYMIR OGORODNYCHUK,

O.O., O.Y., and others, both known and unknown to the Grand Jury, did knowingly and voluntarily combine, conspire, confederate and agree to commit the following offenses…."

A conspiracy to launder money requires proof that: (1) agreement existed between two or more persons to commit a crime, and (2) defendant knowingly and voluntarily joined or participated in the conspiracy—18 U.S.C. §1956(h).  See *U.S. v. Silvestri* (C.A.11) 409 F.3d 1311.

The Government failed to allege or point to an agreement.  For example, reference was to be made to a document with a date or dates, place(s) where it was made, and its participants, nothing to operate beyond a reasonable doubt.  Without that element, Count 2 also missed an indispensable element.  The IRS never submitted the Indictment to the Dutch authorities, which could deduce that the allegations are too vague, inconcrete, and unclear.

Morgunov submits that no such agreement to launder money took place.  Morgunov insists that he never conspired with anyone to violate any laws of the U.S.

The extradition warrant failed to notify Dutch authorities that under US law, money laundering could be alleged only when profit from a felony (not misdemeanor) is laundered (see *United States v. Santos*, 553 U.S. 507 (2008)).

This critical difference in the statutes are contrary to the Dual Criminality requirement and further misstates the applicable US law before a foreign nation's law enforcement and courts.

**19.  Alleged Conspiracy to Harbor and Induce Aliens to Remain Also Has no Basis.**

The underlying case, at the bottom, is about alleged referrals of waitresses at restaurants or housekeepers at the hotels, and if the defendant(s) were aware that those had no authorization to work, and if such incidents were proven.   However, the Indictment and then the SI, respectfully, substituted the applicable statute 8 U.S.C. §1324a(a)(1)(A), relating to 'unlawful employment of aliens,' punishable by up to 6 months or a fine of $3,000.   Instead, the IRS, prosecuting that case used another statute, Subsection 1324(a)(l)(A)(v)(I) (which is used for illegal smuggling of aliens, physical concealment of those in undisclosed locations, and similar serious offenses, not applicable here).

The Government did not substantiate the Indictment and then the SI's allegations other than those that fall under 8 U.S.C. §1324a, which is a different statute.  Allegations of greater culpability would have nothing to do with reality, to the extent of what facts or allegations have been discovered.   As to money laundering allegations under Count 2, even if this particular defendant got involved, on a peripheral side, in processing paychecks, Morgunov is unaware how paychecks to waitresses or cleaning maids at hotels could be portrayed as money laundering.   Morgunov perceives himself as a law-abiding person.

**20. Case Law on Extradition Supports Conclusion that the Present Extradition Request Should Be Quashed.**

The Court should review the Extradition Treaties with the Netherlands and the European Community.  See Exhibits 3, 4.  See *United States v. Alvarez–Machain*, 504 U.S. 655, 663, 112 S.Ct. 2188, 119 L.Ed.2d 441 (1992) ("In construing a treaty, as in construing a statute, [courts] first look to its terms to determine its meaning.").  If the language of a treaty, as here, is clear and unambiguous, the Court must apply the words of the Treaty as written. *Garcia-Godos v. Warden*, 853 Fed.Appx. 404, 408 (11th Cir. 2021) (citing *United States v. Duarte-Acero*, 208 F.3d 1282, 1285 (11th Cir. 2000)).

"It is the Court's "responsibility to give the specific words of the treaty a meaning consistent with the shared expectations of the contracting parties." *Air France v. Saks*, 470 U.S. 392, 399…. Therefore, it would be "particularly inappropriate for [this Court] to sanction a deviation from the clear import of a solemn treaty between this Nation and a foreign sovereign, when ... there is no indication that application of the words of the treaty according to their obvious meaning effects a result inconsistent with the intent or expectations of its signatories." *Maximov v. United States*, 373 U.S. 49, 54, 83 S.Ct. 1054, 10 L.Ed.2d 184 (1963); see also the Restatement (Third) of Foreign Relations Law § 325(1) ("An international agreement is to be interpreted in good faith following the ordinary meaning to be given to its terms in their context and in light of its object and purpose.")" See *Matter of Extradition of Wallace* (M.D.Fla, June 11, 2021) --- F.Supp.3d ---- 2021 WL 2401906.

As stated above, the primary offense that the U.S. is seeking extradition for is what is not prosecutable in the Netherlands. As stated elsewhere, the other counts, Counts 2 (alleging money laundering) and 3 (conspiracy to defraud), are all intertwined with the predicate acts concerning the alleged conspiracy to harbor undocumented aliens.

However, the Dual Criminality Clause mandates that a fugitive be extradited only for conduct that constitutes a serious offense in both the requesting and requested state. *Gallo-Chamorro v. United States*, 233 F.3d 1298, 1306; see also *United States v. Herbage*, 850 F.2d 1463, 1465 (11th Cir. 1988) ("…an individual will be extradited under a treaty containing a double criminality provision only when his actions constitute an offense in both the requesting and requested states.").

A conviction may support questions to the validity of the charges. See the Restatement (Third) of the Foreign Relations Law of the United States, § 476 cmt. b (Am. L. Inst. 1987) ("With respect to persons whose extradition is sought after conviction in the requesting state, the

requirement [of probable cause] is met by proof of the judgment of conviction and, where appropriate, of sentence."). As noted above, there are no judgments against Morgunov, merely a prosecutor's Affidavit with scanty allegations and gross omissions of material import.  Exhibit 2.

**21. The Government's Pursuing Three Ukrainians but Sparing American Hotels and Restaurants Triggers Application of the Political Exception, in the Extradition Treaty.**

With reference to the 2004 Extradition Treaty with the Netherlands, it also forbids extradition based on a political exception, applicable here.

ARTICLE 4: Political and Military Offenses

1. **Extradition shall not be granted** when in the view of the Requested State the offense for which extradition is requested is of a political character, is connected with an offense of a political character, or it is established that **extradition is requested for political purposes**." (Bolding added).

It is submitted that selective prosecution of three Ukrainians and leaving out the true offenders, the American hotels and restaurants, represents prejudice to the Ukrainians based on political purposes.

It may be that the prosecution is driven by considerations of the origins of the Ukrainians, race, or ethnicity.  Three Ukrainians were singled out, as though prosecutors translate prejudice to immigrants from Eastern Europe into charges.  Otherwise, the prosecutors' persistence without any—zero—prospective to collect to the Treasury from three Ukrainians with modest income cannot be explained.  Ukrainians, who have a limited colloquial handle of English, are targeted as scapegoats for the conduct of the employers, American hotels and restaurants.

Extradition may be denied even in the U.S. District Courts on various grounds.  See *Ramos v. Diaz*, 179 F.Supp. 459, 463 (S.D.Fla.1959) (denying extradition to Cuba of an escaped prisoner convicted of murder committed during the Cuban revolution).  *U.S. v. Pitawanakwat*, 120 F.Supp.2d 921 (denial based on political exception).  In one case, the Court denied

extradition where the Philippines did not persuade the Court that the suspect was the one who had committed murder.  *In re Extradition of Strunk* (E.D.Cal., 2003) 293 F.Supp.2d 1117.  In another case, *Matter of Extradition of Santos* (C.D.Cal, 2017) 228 F.Supp.3d 1034, the Court looked into the evidence and how it was collected (inculpatory statements of witnesses implicated in charged kidnapping would be excluded from extradition proceeding in light of the evidence obtained through coercion.)

In a recent case, *Matter of Extradition of Wallace* (M.D.Fla, June 11, 2021) --- F.Supp.3d ---- 2021 WL 2401906, the Court denied extradition to Norway because the underlying offense would be time-barred in the U.S.  However, since that principle is used for denying extradition from the U.S. to Norway, it applies to extraditions from Western Europe to the U.S., where the underlying alleged primary statute is not prosecutable in the Netherlands.  In that case, the allegations against the suspect were much more substantial in Norway, backed by judgments.[7]

If the underlying predicate act is not prosecutable in the Netherlands, the money laundering statute and a conspiracy against the U.S. statute are not sustainable.  Thus, upon the causal break-down in Count 1 of the Indictment and the SI, the charges under 8 U.S.C. Section 1342 is not felonies nor misdemeanors in the Netherlands.  One more Count in the Indictment and two more Counts in the SI essentially cannot be prosecuted without an underlying alleged crime.  It turns out that, if properly pleaded, the offenses alleged against Morgunov are not covered by the applicable extradition treaty. See *In re Extradition of Jose Batista Do Nascimento*, No. 620CV2041ORL40GJK, 2021 WL 1192144, at *2 (M.D. Fla. Jan. 25, 2021); *In re Extradition of Shaw*, No. 14-cv-81475, 2015 WL 3442022, at *5 (S.D. Fla. May 28, 2015) (citing *Fernandez v. Phillips*, 268 U.S. 311, 312, 45 S.Ct. 541, 69 L.Ed. 970 (1925)).

---

[7] To quote from the Court's findings: "To establish probable cause, Norway submits copies of the three judgments2 against Wallace: (1) Judgment by Oslo District Court, dated July 7, 2015; (2) Judgment by Borgarting Court of Appeal, dated January 17, 2017; and (3) Judgment by the Norwegian Supreme Court, dated September 15, 2017". Ibid.

**22. Prior Courts' Orders Granting Motions to Quash and Closing the Cases Opened by the Same Prosecutors' Team.**

This Motion to Quash is already the fourth one in the same matter of the IRS, arising from the same investigation of the three Ukrainians.

Namely, three U.S. District Judges in the U.S. District Court for the Southern District of Florida have already closed the cases arising from quashing the Subpoenas issued for the IRS. By implication, those Subpoenas were deemed improper or unlawful, or in violation of the procedural Rules, as the Orders by the U.S. District Judges The Hon. Cecilia M. Altonaga, The Hon. Ursula Ungaro, and The Hon. Jose E. Martinez show or can be interpreted.

These Orders operating to annul the Subpoenas and closing the cases are enclosed in Exhibits 7, 8, and 9, to wit:

- Order Closing case and Quashing Subpoena of the U.S. Attorney's Office, December 28, 2020, case 20-mc-25171-CMA, Judge The Hon. Cecilia M. Altonaga;

- Order Closing case and Quashing Subpoena of the U.S. Attorney's Office, December 29, 2020, case 20-mc-25174-UU, Judge The Hon. Ursula Ungaro;

- Order Closing case and Quashing Subpoena of the U.S. Attorney's Office, December 31, 2020; case 20-25172-MC, Judge The Hon. Jose E. Martinez.

That underscores that already three U.S. District Judges have viewed the filings of the I.R.S., investigating three Ukrainians, as questionable.

**23. These Issues on the Law Cannot Be Raised in the Dutch Courts, Warranting Consideration on the Merits in District Court.**

The questions presented in this Motion cannot be appropriately litigated before the Dutch court during extradition hearings. The primary allegation in this Motion is that the prosecution misrepresented critically important points of law and facts concerning the underlining cause.

The Dutch courts have neither experience nor jurisdiction in construing U.S. Code. The Dutch courts will accept interpretation presented in the OIA's extradition documents, going through diplomatic relationship, presuming correctness of the submissions, which was grossly incorrect. Dutch courts will not question the interpretation of the US law and will leave questions about U.S. law to the District courts.

This District Court has the plenary power to resolve the question whatever the prosecution misrepresented the domestic law to Dutch authorities and whatever such misrepresentation was improper under the U.S. law. If this Court finds that the prosecution actually violated the procedures and the Due Process, Morgunov would not need to attempt bringing the Dutch Courts assessment of the legality of the U.S. prosecutorial acts in this matter.

## Conclusion.

For the reasons stated above, the Court should issue an Order, quashing the Extradition Request to the Netherlands, dated September 10, 2021, concerning Morgunov and should order the termination of the extradition proceedings with prejudice. As a part of relief under this Motion, Morgunov asks this Court to issue an injunction Order to prohibit the OIA from further pursuing extradition of Morgunov.

Dated: December 10, 2021

Respectfully submitted,

_____/signed George Lambert/
George Lambert, Esq.
D.C. bar #979327; MA bar # 568769; FL bar #1022697
1025 Connecticut Ave., #1000 NW
Washington, D.C., 20036
Tel. (202) 640 1897, Fax (800) 952 1950
Email: LawDC10@gmail.com;
Office.Law.323@gmail.com
Attorney for Oleksandr Morgunov (representation limited to prosecuting the Motion to Quash Extradition)